IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
EMMIT L. MCNEILL,                )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     1:09CV698
                                 )
PTL. BRANDON SCOTT, et al.,      )
                                 )
          Defendants.            )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The instant case comes before the undersigned United States Magistrate Judge for recommended rulings on Defendants Cleary and Scott's Motion for Summary Judgment (Docket Entry 52) and Defendants Grady and Rodger's Motion for Summary Judgment (Docket Entry 54). For the reasons that follow, the Court should deny Defendants Cleary and Scott's instant Motion, and the Court should grant in part and deny in part Defendants Grady and Rodger's instant Motion.

## I. PROCEDURAL HISTORY

Plaintiff's Amended Complaint purports to allege violations of the Fourth and Eighth Amendments of the United States Constitution for excessive force (against Defendant Scott) and bystander liability (against the remaining Defendants), as actionable under 42 U.S.C. § 1983, in Defendants' individual and official capacities. (Docket Entry 31 at 9.) After Plaintiff filed his Amended Complaint, Defendants Scott and Cleary (collectively the

"Raeford City Defendants") filed a Motion to Dismiss Plaintiff's official capacity claims. (Docket Entry 33.) The Court granted the Motion and dismissed the official capacity claims against the Raeford City Defendants. (Docket Entry 43.)

The Raeford City Defendants filed their Motion for Summary Judgment first (Docket Entry 52), which contends that Defendant Scott used reasonable force in apprehending Plaintiff such that qualified immunity precludes this action (Docket Entry 53). Similarly, Defendants Rodger and Grady's (collectively the "Hoke County Defendants") Motion for Summary Judgment (Docket Entry 54) argues that qualified immunity applies to their conduct, and, further, that Plaintiff has failed to establish a violation of the Eighth Amendment or provide any basis for his official capacity claims (Docket Entry 55). Plaintiff responded (Docket Entry 59) and also filed an affidavit containing his version of the events from that morning (Docket Entry 59-1). The Raeford City Defendants and the Hoke County Defendants replied, arguing that summary judgment remains appropriate. (Docket Entries 60, 61.)

## II. FACTUAL BACKGROUND

This case arises from Defendant Scott's alleged use of excessive force against Plaintiff and the remaining Defendants' failure to intervene. (Docket Entry 31.) As detailed below, the parties present markedly different versions of events.

2

A.  Defendants' Version

In the early morning of February 27, 2009, while on patrol in Raeford, North Carolina, Defendant Grady noticed an individual (later identified as Plaintiff) running away from a Burger King with a bag in hand toward an apartment complex. (Docket Entry 54-1, ¶ 6.) At the same time, Defendant Rodger, attempting to meet Defendant Grady, also noticed Plaintiff fleeing the Burger King. (Docket Entry 54-2, ¶ 6.) Immediately thereafter, Defendant Grady received radio notice of a possible armed robbery of the Burger King. (Docket Entry 54-1, ¶ 6.) Both the Hoke County Defendants began pursuing Plaintiff. (Id., ¶ 7; Docket Entry 54-2, ¶ 7.)

At that time, the Raeford City Defendants separately received notice of the armed robbery and headed towards the scene. (Docket Entry 53-1, ¶¶ 4-5; Docket Entry 53-2, ¶¶ 4-5.) The Hoke County Defendants returned to the scene and met with the Defendant Scott to discuss the situation. (Docket Entry 53-1, ¶ 6.) Defendants then began searching the nearby apartment complex for Plaintiff. (Docket Entry 53-1, ¶¶ 8-9; Docket Entry 53-2, ¶ 8; Docket Entry 54-1, ¶¶ 9-10; Docket Entry 54-2, ¶ 8.) Eventually, Defendant Grady located Plaintiff, under a hedge, and radioed the other Defendants for backup. (Docket Entry 53-1, ¶¶ 10-11; Docket Entry 53-2, ¶ 9; Docket Entry 54-1, ¶¶ 10-11; Docket Entry 54-2, ¶ 8.)

Upon discovering Plaintiff, Defendant Grady drew his service weapon and ordered Plaintiff to come out from the hedge (Docket

3

Entry 54-1, ¶ 11), and Defendants Scott and Rodger arrived soon after (Docket Entry 53-1, ¶ 11; Docket Entry 54-2, ¶ 8). At this point, either Defendant Grady or Defendants Grady and Scott handcuffed Plaintiff. (Compare Docket Entry 53-1, ¶ 12 (Defendant Scott claiming that he assisted Defendant Grady in handcuffing Plaintiff), and Docket Entry 54-1, ¶ 11 (Defendant Grady's statement: "I was one of the officers who placed Plaintiff in handcuffs."), with Docket Entry 54-2, ¶ 8 (Defendant Rodgers claiming that Defendant Grady placed Plaintiff in handcuffs).) Before leaving, the Hoke County Defendants turned over custody of Plaintiff to Defendant Scott, who then radioed for Defendant Cleary to bring his car around to transport Plaintiff to the police station. (Docket Entry 53-1, ¶ 13.)

Defendant Scott escorted Plaintiff towards Defendant Cleary's patrol vehicle. (Id., ¶ 14.) However, while en route, Plaintiff began resisting by standing on his toes and kicking his feet back at Defendant Scott. (Id.) In an attempt to regain control of Plaintiff, Defendant Scott tripped Plaintiff and took him to the ground. (Id., ¶¶ 15-16.) Defendant Cleary, having moved his patrol car to collect Plaintiff, observed Defendant Scott and Plaintiff hit the ground but could not tell what caused them to fall. (Docket Entry 53-2, ¶¶ 10, 14.) Defendant Scott told Plaintiff to calm down and regained control of him before standing himself and Plaintiff up (Docket Entry 53-1, ¶¶ 16-17); they then

4

walked to Defendant Cleary's patrol car and Defendant Cleary transported Plaintiff to the Police Department (id., ¶ 17; Docket Entry 53-2, ¶ 16).

B. Plaintiff's Version

Plaintiff's affidavit begins with Defendant Grady discovering his location. (Docket Entry 59-1, ¶ 3.) Plaintiff states that he complied with Defendant Grady's commands to come out from under the hedge, and that Defendant Grady then handcuffed Plaintiff as he laid face down on the ground. (Id.) While Plaintiff remained handcuffed on the ground and compliant with Defendant Grady's commands, Defendant Scott arrived, jumped in the air, and slammed his knee into Plaintiff's back. (Id., ¶ 4.) Plaintiff further asserts that Defendant Scott then hit Plaintiff in the arm, side, thigh, and ankle for approximately one minute while Deputy Nall[1] and Defendants Clear, Rodger, and Tracy stood by and watched. (Id., ¶ 5.) According to Plaintiff, Defendant Grady and either Deputy Nall or Defendant Cleary eventually interceded and stopped Defendant Scott. (Id., ¶ 6.) Plaintiff insists that he complied with Defendant Grady's commands and did not resist in any fashion. (Id., ¶ 7.)

Plaintiff's affidavit does not detail his walk to Defendant Cleary's patrol car other than to deny kicking at Defendant Scott

---

[1] This action does not name Deputy Nall as a defendant. (See Docket Entry 31 at 6.)

5

and, indeed, Plaintiff denies that Defendant Scott walked him to the patrol car. (Id., ¶¶ 10-11.)

### III. ANALYSIS

The Court should grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This standard requires more than a mere scintilla of evidence. American Arms Int'l v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc). The Court also must presume the credibility of all of the nonmovant's evidence. Id. The party seeking summary judgment has the initial burden to show an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The opposing party then must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A party need not submit evidence in an admissible form, but the evidence must otherwise qualify for admission at trial. Celotex Corp., 477 U.S. at 324.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Brown v. Gilmore, 278 F.3d 362, 366-67 (4th Cir. 2002) (quoting Mitchell v. Forsyth, 427 U.S. 511, 526 (1985)). "The Supreme Court has directed that 'qualified immunity questions should be resolved at the earliest possible stage of a litigation.'" Smith v. Reddy, 101 F.3d 351, 357 (4th Cir. 1996) (quoting Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987)). Qualified immunity involves a two-step analysis. Williams v. Ozmint, 716 F.3d 801, 805 (4th Cir. 2013). The Court must consider (1) "whether a constitutional violation occurred," and (2) if "the right violated was 'clearly established' at the time of the official's conduct." Id.[2]

The undersigned will first consider the claim of excessive force against Defendant Scott as any finding of bystander liability for the remaining Defendants relies on Defendant Scott's alleged excessive force. See Thomas v. Holly, 533 F. App'x 208, 221 (4th Cir. 2013) (noting that a finding of bystander liability for a defendant required a finding of excessive force by another defendant). After addressing the claims against Defendants in their individual capacities, the undersigned will address the Hoke County Defendants' challenges to Plaintiff's Eighth Amendment claim and the official-capacity claims.

---

[2] In this case, Defendants only address the first prong of qualified immunity (see Docket Entry 53 at 11, 12; Docket Entry 55 at 7), so this Memorandum Opinion will proceed in a like fashion.

A. Defendant Scott

Under the facts averred by Plaintiff (detailed in Section II.B.), Defendant Scott acted with excessive force during Plaintiff's February 27, 2009 arrest. Excessive force arrest claims fall under the Fourth Amendment's "objective reasonableness" standard. Gilmore, 278 F.3d at 369. "In evaluating excessive force claims, 'the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective.'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 205 (2001)). The Court should consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). "The extent of the plaintiff's injury is also a relevant consideration." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003).

Defendant Scott argues that his actions did not rise to the level of a constitutional violation, and, thus, qualified immunity shields his actions. (Docket Entry 53 at 7-11.) Defendant Scott's argument rests primarily on his version of events from that morning (see id.; Docket Entry 60 at 2-5; see also Docket Entry 53-1 (Defendant Scott's affidavit)); however, the relevant inquiry here

8

concerns the facts in the light most favorable to Plaintiff, see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011).

Defendant Scott attempts to avoid this rule by relying on Scott v. Harris, 550 U.S. 372, 380 (2007). (See Docket Entry 60 at 2-3.) In Scott, the United States Supreme Court addressed the effect of an uncontested videotape on a motion for summary judgment. Scott, 550 U.S. at 378-79. That case concerned a Section 1983 claim against a police officer who stopped a high-speed chase by intentionally wrecking the plaintiff's car. Id. at 374-75. The defendants moved for summary judgment on the basis of qualified immunity, but the district court denied the motion finding that a genuine dispute of fact existed, which the United States Court of Appeals for the Eleventh Circuit affirmed. Id. at 376. Upon review, the Supreme Court noted the existence of the videotape recording the car chase and found that it contradicted the plaintiff's version of events. Id. at 378-79. Significantly, the Court noted that no dispute existed as to the videotape's authenticity or accuracy. Id. at 378. Relying on the videotape, the Court rejected the plaintiff's version of events for purposes of analyzing the motion for summary judgment and reversed the Eleventh Circuit. Id. at 380-81, 386.

This case does not resemble Scott. Here, the evidence before this Court consists of contradictory affidavits between Plaintiff and Defendants. (See Docket Entries 53-1, 53-2, 54-1, 54-2, 59-1.)

9

That fact precludes reliance on Scott. See Stout v. Reuschling, Civ. Act. No. TDC-14-1555, 2015 WL 1461366, at *10 (D. Md. Mar. 26, 2015) (unpublished) ("The evidence offered in this case is simply not on equal foo[t]ing with the type of evidence that documented the incident with the level of certain[t]y and reliability as the videotapes in *Scott* . . . . Where, as here, the parties offer dueling affidavits with substantially different accounts, *Scott* instructs that 'in such posture, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.'" (quoting Scott, 550 U.S. at 378)). "It is not [the Court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe. Those tasks are for the jury." Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991) (internal citation omitted). Accordingly the undersigned will analyze the instant Motions under Plaintiff's version of events.

The facts described by Plaintiff, in light of Graham, lead to the conclusion that a reasonable jury could find that Defendant Scott used excessive force against Plaintiff. The first Graham factor, the severity of the crime at issue, favors Defendant Scott. At the time of the arrest, Defendants believed that Plaintiff had committed an armed robbery. (See Docket Entry 53-1, ¶ 5; Docket Entry 53-2, ¶ 5; Docket Entry 54-1, ¶ 6.) In addressing a

10

qualified immunity defense, a member of this Court previously found that robbery qualifies as a serious crime. Maney v. Fealy, 69 F. Supp. 3d 553, 561 (M.D.N.C. 2014) (Beaty, J.), appeal filed, No. 14-7791 (4th Cir. Dec. 8, 2014). Thus, this factor favors Defendant Scott.

The second Graham factor, whether the suspect posed an immediate threat to the safety of officers or others, heavily favors Plaintiff. According to Plaintiff, while laying face down, handcuffed,[3] with a service weapon and taser pointed at his head, and not resisting, Defendant Scott attacked Plaintiff. (Docket Entry 59-1, ¶ 4.) Thus, Plaintiff posed little danger to Defendants or others at that time. The third Graham factor, whether the suspect resisted or attempted to flee, also favors Plaintiff. Plaintiff has reported that he complied with all orders and took no actions to resist arrest before or when Defendant Scott attacked. (Id., ¶¶ 4, 7.) In addition (as deemed relevant in Jones), Plaintiff's affidavit states that he sustained significant injuries as a result of the alleged attack, including a broken ankle, long-lasting back pain, and migraines. (Id., ¶¶ 5, 17.)

Taking the Graham factors into account and reviewing Plaintiff's factual allegations, Defendant Scott's actions do not,

---

[3] Although Plaintiff does not state whether Defendant Grady placed the handcuffs with his hands in front or back (see Docket Entry 59-1), Defendant Scott's affidavit suggests that the Defendants handcuffed him with his hands behind his back (see Docket Entry 53-1, ¶¶ 11-12).

11

as a matter of law, qualify as reasonable under the circumstances. Therefore, the Court should deny Defendant Scott's Motion for Summary Judgment.

B. Bystander Liability

The Court also should deny Defendant Cleary's and the Hoke County Defendants' Motions for Summary Judgment regarding Plaintiff's bystander liability claims. "[A]n officer may be liable under § 1983, on a theory of bystander liability if, he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 204 (4th Cir. 2002) (footnote omitted). In this case, the remaining Defendants focus their attack on the first element and argue that they did not witness the use of any excessive force. (See Docket Entry 53 at 11-12; Docket Entry 55 at 9-10.)

The remaining Defendants rely on their own affidavits to establish that they did not witness any excessive force by Defendant Scott. (See Docket Entry 53-2, ¶ 12; Docket Entry 54-1, ¶¶ 11-14; Docket Entry 54-2, ¶¶ 11-13.) However, as demonstrated above, at this stage, the focus remains on the facts in the light most favorable to Plaintiff. Miller, 913 F.2d at 1087. The remaining Defendants do not attempt to evaluate Plaintiff's claims from his perspective, rather they contend that the Court should

12

discount and ignore his affidavit.  (See Docket Entry 60 at 2-5; Docket Entry 61 at 2-3.)  In that regard, the remaining Defendants label various aspects of Plaintiff's affidavit as conclusory, incredible, and contradicted by the record.  (See generally Docket Entry 60 at 2-5; Docket Entry 61 at 2-3.)  These arguments lack merit.

Plaintiff does make some conclusory statements (see Docket Entry 59-1, ¶ 16 ("[Defendant] Scott's actions were not considered 'reasonable' given the situation.")), but also offers sufficient factual statements based upon his personal knowledge of what happened (see id., ¶¶ 2, 3, 4, 5, 6).  Further, to the extent Defendants rely on their own affidavits contradicting Plaintiff's account, such arguments fail for reasons described in the previous subsection.  Nor have Defendants offered any argument or authority to support the view that Plaintiff's account qualifies as incredible, as a matter of law.  (See Docket Entry 60 at 3; Docket Entry 61 at 3.)

Under Plaintiff's facts, when Defendant Scott allegedly attacked Plaintiff, Defendant Grady held his service weapon and taser to Plaintiff's head.  (Docket Entry 59-1, ¶ 4.)  Further, Plaintiff states that, while Defendant Scott beat Plaintiff, Deputy Nall and Defendants Cleary, Rodger, and Grady simply stood and watched.  (Id., ¶ 5.)  Plaintiff then remarks that, after a minute of Defendant Scott's attack, Defendant Grady and either Deputy Nall

13

or Defendant Cleary finally stopped Defendant Scott. (Id., ¶ 6.) These factual allegations, with all reasonable inferences taken in Plaintiff's favor, support Plaintiff's contention that the remaining Defendants witnessed the alleged attack and waited to intervene, thereby satisfying the first, and only contested, element of bystander liability. Accordingly, the Court should deny Defendants' Motions for Summary Judgment to the extent they seek dismissal of bystander liability claims.

C. The Hoke County Defendants

The Hoke County Defendants additionally move for summary judgment on Plaintiff's claims for violating the Eighth Amendment and against the Hoke County Defendants in their official capacities. Because the alleged incident occurred in the course of an arrest, the Fourth Amendment applies and, thus, the Court should grant the Hoke County Defendants' instant Motion as to the Eighth Amendment claim. Additionally, because Plaintiff has failed to proffer facts sufficient to demonstrate that any Fourth Amendment violation arose from an official policy or custom of the Hoke County Sheriff's Office, the Court should grant the Hoke County Defendants' instant Motion as to Plaintiff's official capacity claims.[4]

---

[4] Additionally and alternatively, Plaintiff failed to address these specific issues in his response to Defendants' Motion for Summary Judgment (see Docket Entry 59), and the Court could find these claims abandoned and grant Defendants' Motion as to these claims, see Feldman v. Law Enf't Assocs. Corp., 955 F. Supp. 2d

14

1. Eighth Amendment

The United States Supreme Court has held that the Fourth Amendment covers all claims for excessive force claims arising from arrests, investigatory stops, or other seizures of a person. Graham, 490 U.S. at 388. In doing so, the Court specifically rejected using the test for excessive force against prisoners protected by the Eighth Amendment. Id. at 398. Moreover, the Court expressly stated "the less protective Eighth Amendment standard applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" Id. (quoting Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977)). In this case, Plaintiff's own affidavit reveals that the excessive force occurred in the course of an arrest and not after a conviction. (See Docket Entry 59-1.) Accordingly, the Eighth Amendment does not apply to his claim and the Court should grant the Hoke County Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment claim.

2. Official Capacity Claims

An official capacity suit represents a suit against the governmental entity. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). "Official liability will attach under § 1983 only if execution of a government's policy or custom, whether made by its

---

528, 536 (E.D.N.C. 2013) (citing cases). Nevertheless, the claims fail on their own merit.

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002) (internal quotation marks omitted). Furthermore, a plaintiff cannot predicate official liability based on a respondeat superior theory of liability. Id. Here, Plaintiff has proffered no facts to suggest that the alleged excessive force occurred as a result of a policy or custom of the Hoke County Sheriff's Office. (See Docket Entries 59, 59-1.) Moreover, Plaintiff's claim fails to the extent it relies on respondeat superior. Gantt, 203 F. Supp. 2d at 509. Accordingly, the Court should grant the Hoke County Defendants' Motion for Summary Judgment to the extent it seeks dismissal of the claims against the Hoke County Defendants in their official capacity.[5]

---

[5] The Court previously dismissed the official capacity claims against the Raeford City Defendants. (See Docket Entry 43.)

16

**CONCLUSION**

Plaintiff has come forth with sufficient factual support to create a genuine dispute of material fact regarding his claims of excessive force and bystander liability. Accordingly the Court should deny Defendants' summary judgment motions as to those claims. However, Plaintiff did not address or present factual support regarding his Eighth Amendment and official capacity claims. Thus, the Court should grant summary judgment in the Hoke County Defendants' favor on those claims.

**IT IS THEREFORE RECOMMENDED** that Defendants Scott and Cleary's Motion for Summary Judgment (Docket Entry 52) be denied, and that Defendants Grady and Rodger's Motion for Summary Judgment (Docket Entry 54) be granted in part and denied in part, in that the Court should enter judgment in their favor on Plaintiff's Eighth Amendment and official capacity claims.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 19, 2015